Good morning. May it please the court, counsel, Judge Gould. I'd like to reserve two minutes, please, for rebuttal. This case, Mr. Mejia's case, is different from the case just argued and also different from Vaughn, the case that this attorney, assistant attorney general, did not appeal to this court, in that in both of those cases, the prior bad acts were conclusively proven. In Vaughn, there was a stipulation where the defendant admitted the truth of the prior acts on, I believe, his daughter. And in the Mendez case, it was an actual conviction that was found by a jury. In Mr. Mejia's case, the jury had to find, had to try, essentially, the acts on Norma, my client's 15-year-old daughter. I'm glad to see that the high school students are not here now because these facts are very disturbing, but the issues are so compelling that I have to go into some detail on the facts. And the State has indicated that it will retry my client on the rape counts, which have been already reversed by the district court. And so the matter before this Court is really whether the Winship error that is conceded to have occurred by the attorney general affected only the rape convictions or whether it also affected the convictions for assault and kidnapping, which would compose all crimes for which Mr. Mejia was accused. And that is what the jury instruction told the jury, that they could find by the predisposition to convict. But isn't that, that's really the question in front of us as to whether that's so. That's right. Isn't it truly, isn't it also a fact, counsel, that the jury acquitted the defendant of one count of rape with a firearm? Yes, I believe so, Your Honor. And acquitted the defendant of one count of penetration with a foreign object?  And made those specific determinations actually support my point? So yes. Yes, I believe so. And also acquitted the defendant of one count of forcible copulation? I'm not sure about that, but that's probably so. It sounds like you know all of them. Well, as I understand it then, in this particular matter, even though the instruction was given, and even though it's your argument that the instruction ought to apply to situations that have nothing to do with sexual crimes, that I am supposed to suggest that the fact that those instructions were there and the fact that there are crimes that have nothing to do with sexual crimes ought to have, that the jury somehow applied those to those particular crimes, and yet they found them not guilty as to sexual crimes. Now, my biggest problem with that is, again, the standard of review for a habeas case. If I apply the standard of review for a habeas case, it seems unclear to me that I can come to an absolute satisfaction that when they'll acquit them of the very crimes for which they may not have acquitted them, if we take Gibson at its logical conclusion, how would it ever relate to those that have nothing to do with the sexual? Well, Your Honor, in this case, the district court said that they were dissimilar, and I strongly disagree with that. And that is kind of the kernel of a lot of this argument, that in this particular case, the offenses of kidnapping and assault were very closely intertwined, both For example, count 3, which is holding the knife to the throat of Maria in the motel room, was the duress element or the force element for that crime of rape, and that was argued by the DA in that case, and also it's clear. It's happening during and immediately preceding the rape. So it's causing the defendant to be able to obtain the compliance of the victim. Now, with regard to the kidnapping. But does it matter so much? I mean, the first crime, the one that's being held up as proof of the disposition, there was not kidnapping there. That's not true, Your Honor. There was not a knife there. I disagree, Your Honor. There was not a knife, but there was a gun. He did the same exact thing. A gun that's not pointed at the victim. He did the same thing to this 15-year-old girl that he did to Maria with a gun, which is he showed her a gun. He didn't point the gun at Maria during the rape that occurred after the Orange Grove incident. He, I think it's that one, he showed it to her, and both women said the same exact thing. They said, he showed it to me so that I would know it was there. That, and the DA argued that that also showed duress. The kidnapping also, in response to Maria telling her sister about the rapes that were going on, he became enraged and took the two women to the Orange Grove. That's the kidnapping. In response to Norma telling the police, now, both Norma and the defendant believed, my client believed, that the officer who appeared in their small village in Mexico was there because Norma had told. She did tell a school counselor, and this DA's investigator showed up in the town, and he was known to people in the town. And so everyone believed, and especially Mr. Mejia believed, that he was there because she had told. And he grabbed her and the other little kids that he had there with him, took them in a truck, the same thing that he did in the Orange Grove, and drove them out of town, out to an outdoor area, and then put her in a hole, in a ditch, I presume, to hide for an hour until he was sure that this man had left the town. And so I can't imagine that the jury would have believed that she wanted to go with him in the truck when she herself had initiated the report to the police. But there's nothing in the jury instruction that speaks to that offense. But isn't that's a fact, though. Isn't that kidnapping? I mean, the district court was ruling that there was no kidnapping. Your client doesn't get a pass for all the other bad things he's done. The problem here is focused on this instruction. I don't understand how this instruction prejudiced your client with regard to the fact that he'd done this kidnapping-type style offense, separate and apart from the sexual assault on Norma that is triggered by this instruction. Well, I think my argument is that it's not separate and apart. It's all part of it. Then that night he raped her in punishment for telling. Same thing happened after the Orange Grove incident. He raped her that night and told her it was punishment for telling. The jury is never told to only apply the propensity to sexual offenses. It says to the crimes of which he is accused. But wouldn't you agree with me that the way the instructions are written, that at least they're ambiguous? Your Honor, the court in this court in Gibson held that it's not ambiguous. So you're saying it's ambiguous as to these other offenses. And those were all sexual offenses. We do not necessarily. And in this particular situation, with sexual offenses, the jury acquitted the defendant. And now we have two offenses which you want us to suggest that these are unambiguous situations. If they're ambiguous, then I have to find if there was a reasonable likelihood that they applied the challenged instruction in a reasonable way. Isn't that my standard? That's the standard, Your Honor. If you follow, if you believe that it's ambiguous, then you have to find that there's you have to find that the jury applied it, that there's a chance that the jury applied it more than a chance. It's reasonably likely that the jury applied it incorrectly. And in this situation, they're not told. And by the way, the U.S. Supreme Court case Francis v. Franklin says, holds, that the general reasonable doubt instruction does not trump or correct the error created by an erroneous specific instruction. In this case, the specific instruction is given twice. It's given right before Norma testifies, and it's given during the closing instructions. The general reasonable doubt instruction is just given at the end. So it's not the judge doesn't say, and by the way, you have to find all offenses after you hear Norma's testimony. You have to find them all beyond a reasonable doubt. So the jury, it's actually more likely that the jury would follow the specific instruction because it was given in close proximity to the testimony that we're talking about, that it's all about, this testimony from the daughter. In addition, in this particular case, I want to address the likely inflammatory nature of the evidence as well. And I'd like to go on, if I could, to the due process argument. I know that this Court is not likely to reverse the majority in Alberni, but I urge you to seriously consider that in Alberni, they say that if the Court would have found that there could be no due process violation because of propensity evidence, then that would violate Supreme Court precedent. And in this case, it was the evidence was so inflammatory, it was so emotionally charged that the prosecutor argued that the girl was forced to relive the horrors of the rapes by having to testify in court. She closely grouped the three women and talked about the duress that they were under, the way they had to live under him, and what a horrible person he was. Well, however, however, again, we're stuck with Estelle, aren't we? Because, really, it's what the Supreme Court says the law is. And the Supreme Court said, we express no opinion on whether a State law would violate the due process clause. So, and even if we go with Estelle, and then, as I understand, you've correctly stated the case in front of us from our own circuit, which leads us in the same direction. So we have to look at standard review, don't we? What about McKinney? McKinney was decided by this Court in 1993, McKinney explicitly. It's not about sex, but it's about prior conduct that was not a conviction. And it talks about Michelson and Dowling and Loper v. Beto, all cases that say how horrible it is to allow a jury to determine the guilt of the defendant in this case based on propensity and how likely juries are to do that. And in those cases, there was not a specific propensity instruction allowing them to do that, encouraging them to make that leap. Those are Supreme Court cases that govern. They generally govern this area of the evils of propensity evidence and how prejudicial it can be. In Estelle v. McGuire, there was no propensity instruction, and in that case, they found there was a proper purpose for the child, child, battered child syndrome evidence. And so it wasn't a factor in that case, so they weren't going to rule on it. But the case does not say there is no law, no established Supreme Court precedent that governs this area. And that's what the Judge McKeown said in the dissent in Alberni. Well, the numbers are now going up, but since we've driven you off your course, we'll still give you a minute for rebuttal. I appreciate that. Thank you, Your Honor. Good morning. May it please the Court. Justin Riley on behalf of the Warden. I'd like to start by clarifying something that's probably my fault, but the jury acquitted, and I – it was vague. On page 20 of my brief, I stated that the jury acquitted the appellant of one count of rape with a firearm, and what it was is they didn't find the firearm allegation to be true with regard to that rape. The other two on page 21, the count of penetration by a foreign object and one count of forcible copulation, they acquitted on those two counts. I'd like to touch briefly on the difference between showing a weapon to a victim and pointing one at a victim. The jury found that distinction to be quite important as they asked the trial court, specifically, did the appellant point a gun at the victim, and I believe that was the allegation they found to be not true with regard to the firearm. The dissimilarity continues. The only propensity evidence that touched on the subject of a firearm was the appellant not showing the gun, didn't brandish it. There's no evidence of brandishing or showing, but placing a gun under his head like a pillow. That's completely dissimilar to holding a knife to a victim's throat on one count, and then on the second count, pressing a gun against a victim's temple, and then on the third count, firing the gun twice in the general vicinity of the victim. It is true that a general reasonable doubt instruction will not trump a specific one, so let's look briefly, and this is important because I didn't specifically include it in my brief. The trial court included two specific instructions that were not present in Gibson. Now, Gibson found this to be notable, which I'll touch on later, but with regard to the kidnapping charge, the trial court set forth, and this all occurred later in time than the challenge instructions. The trial court set forth the elements of kidnapping, and then at page 23, the trial court stated, If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the crime charged, this is at 23 of the excerpts of record, you may nevertheless convict him of any lesser crime if you are convinced beyond a reasonable doubt that the defendant is guilty of the lesser crime. Then with regard to the assault charges, this is again later in time than the challenged instructions, and the trial court set forth the elements of the assault, and this is at page 27 of the excerpts of record about line 6. If from all the evidence you have a reasonable doubt that the defendant had general criminal intent at or during the time of the movement, you must find him not guilty of kidnapping. Now, the Gibson court at page 821 of its opinion found it notable that the trial court in that case did not again instruct the jury with regard to what the standard of proof was after the challenged instructions. Here we have the trial court again alerting the jury that the standard of proof is beyond a reasonable doubt with regard to the kidnapping and with regard to the assault later in time than the challenged instructions. It is this difference, among others, that Gibson's rationale is inapplicable here. Excuse me. The State court could reasonably determine that the jury was not reasonably likely to apply the challenged instructions in a way that violates the Constitution. To do this under Estelle v. McGuire, the State court could reasonably determine that the instructions, when taken as a whole and in light of the State court record, proved that or showed these instructions to be ambiguous. Now, I just touched on the instructions by the jury. The language of the challenged instructions themselves, as I've set forth in my brief in the district court found, limited the jury's use of the propensity evidence to sexual offenses. Now, the State court on direct appeal actually found this concept to be true as well, and that's at page 221 of the excerpt of record. The trial court found that the instructions were limited to the propensity evidence and limited to sexual offenses. I guess the problem is that the instruction uses a shorthand reference the second time it comes around, and to what extent the jury might have been confused by that, I think, is the question that gets put in front of us, because the second time in that same paragraph, I guess I should use the real language, but the second time in the same paragraph, it doesn't include the adjective anymore. It just says you can be found guilty of the offenses with which he was charged. That's true. Isn't that a problem? Yes, it is. I believe it's a problem that shows that the instructions are ambiguous. Well, that's really the question that I put to counsel. Right. Gibson doesn't say it's ambiguous. Gibson says they're very straightforward, easy to read, no problem. They're not ambiguous, and therefore Estelle is not applicable. Absolutely. Gibson wasn't faced with the problem we're faced with here. Gibson had domestic violence propensity evidence to show domestic violence charges and had sexual offense propensity evidence to prove sexual offense charges. They didn't they weren't faced with the problem of sexual offense propensity evidence or domestic violence propensity evidence, for that matter, to show non-sexual offenses, kidnapping and assault are not sexual offenses by any stretch. This Court is instructed by Estelle v. McGuire, Kupfer, Zidot and the like to look at the trial court record and the instructions as a whole. Now, the trial court record is just full of evidence that shows that these instructions were at least ambiguous. Now, this Court can even look to the jury's verdict, as Your Honor was pointing out. The jury found or acquitted Appellant on two counts and one allegation. That also shows that the instructions were at least ambiguous. The instructions that I read to you from the excerpts of record where after the propensity instructions were read, the trial court still alerted the jury to the correct standard of proof. That renders the challenge instructions ambiguous. And then the language of the instruction itself, limiting the use of the propensity evidence to sexual offenses. I believe that raises at least an ambiguity to where the State court reasonably applied Estelle v. McGuire and found that the jury did not – I'm sorry, let me get this exactly right – and found that it was not reasonably likely that the jury applied the instruction in a way that violates the Constitution. I'm prepared to submit it unless the Court has any other questions. Thank you. Thank you. Your Honors, just briefly, everybody's assuming that because the jury – I mean, I think you gentlemen are assuming that because the jury acquitted my client of some counts that that means that they didn't apply the propensity instruction. I think that the more likely reason is that there was insufficient, maybe glaringly insufficient evidence of those counts, and the jury saw that and declined to convict him on those counts. So the emotional testimony, the inflammatory testimony that was so similar, the victims were so similar, both young women in his family, under his care, the circumstances in their – raping them in their own homes, in the presence of sleeping children, both of them, taking them both outside to places where they would be unprotected and undetected by other people to terrorize them. Those facts are so similar in both sets of offenses, of acts, both relating to the kidnapping charge and to the assault charges, and in particular, the assault – the assault charge pertaining to the knife, since the knife was used in the same way that the gun was used with Norma and the gun was also used with Maria, to show her that it was there, to show the victim that he was holding a weapon to cause the duress and fear that is a required element of rape. And so on that basis, I ask the Court to reverse the district court. Thank you. Thank both counsels for their argument. The case just argued is submitted. And we now turn to the third of our Gibson trilogy for the day, Hebner v. McGrath.
judges: Gould, Clifton, Smith